FILED

04/03/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2017 Session

**STATE OF TENNESSEE v. SAMUEL HUFFINE**

**Appeal from the Criminal Court for Sullivan County
No. S64194   James F. Goodwin, Jr., Judge**

_____

**No. E2016-02267-CCA-R3-CD**

_____

Pursuant to a plea agreement, the Defendant, Samuel Huffine, pleaded guilty to vehicular homicide by intoxication, reckless aggravated assault, reckless endangerment, driving under the influence of an intoxicant, driving under the influence of an intoxicant per se, driving left of center, and speeding, for an effective sentence of nine years, with the trial court to determine the manner of service of the sentence.  Following a sentencing hearing, the trial court ordered the Defendant to serve his sentence in the Tennessee Department of Correction.  On appeal, the Defendant asserts that the trial court erred when it denied an alternative sentence.  We affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Troy L. Bowlin II, Morristown, Tennessee, for the appellant, Samuel Huffine.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry P. Staubus, District Attorney General; and Lesley A. Tiller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION
I. Facts**

The State summarized the proof against the Defendant as follows:

[O]n July 19th, 2014 at approximately 5 a.m. Bobby Jarrett was driving a 2007 Kia Spectra eastbound on Stone Drive in Kingsport, Tennessee,

Sullivan County, on his way to work at Food City. Meanwhile the defendant was driving west in the eastbound lanes on Stone Drive in a 2006 Honda Accord and he hit Mr. Jarrett's Kia head on. Mr. Jarrett died as a result of the crash and at trial the State would have presented testimony from a forensic pathologist that Mr. Jarrett died of blunt force trauma consistent with a car crash. At the time of the crash the defendant had a passenger in his vehicle, his wife, Summer Huffine, and she was injured in the crash. She suffered a concussion, broken bones in her foot and ribs and contusions on her face and elbow.

The State's proof would have been that in the hours leading up to the crash the defendant and his wife had been in downtown Bristol, Tennessee and at the time of the crash were on their way home. The State's proof would have been that in the area of Stone Drive where the crash occurred there were three eastbound lanes, three westbound lanes and a center turning lane and that the area of impact was in the middle eastbound lane. There was a tractor/trailer driven by Brian Hobbs traveling behind Mr. Jarrett's vehicle and the crash was captured on video by the tractor/trailer's in cab video recording system. Due to the close proximity of Mr. Hobbs' truck to the crash location Mr. Hobbs was placed in imminent danger of death or serious bodily injury by the defendant's conduct.

The State would have presented testimony from Brian Gouge who saw the defendant's vehicle start traveling in the oncoming lanes of traffic near the Eastman Credit Union ATM located just west of IHOP on Stone Drive. The State's proof would have been that that location of the ATM was 1.1 miles west of the location of the crash.

The defendant consented to a blood draw which was drawn at 6 a.m., approximately one hour after the crash occurred and testing of his blood by the Tennessee Bureau of Investigation Laboratory revealed that his blood alcohol concentration was .152%. In addition Kingsport Police Officer Matt McGuire, who the State would tender as a crash reconstructionist, would put Mr. Huffine's speed at the time of the crash at, at least, 60 miles per hour and the posted speed limit was 45.

The trial court reviewed the Defendant's rights and the attendant waivers to entering a guilty plea with the Defendant, who expressed his understanding and desire to enter guilty pleas to all offenses.

The Defendant pleaded guilty to: (1) vehicular homicide by intoxication, a Class B felony, to serve nine years as a Range I standard offender, with a 30% release eligibility date, and a $350.00 fine; (2) reckless aggravated assault, a Class D felony, to serve four years as a Range I standard offender, with a 30% release eligibility date, and a $50.00 fine; (3) reckless endangerment, a Class E felony, to serve two years as a Range I standard offender, with a 30% release eligibility date, and a $50.00 fine; (4) DUI, which the trial court merged with the vehicular homicide by intoxication conviction; (5) DUI with a BAC greater than or equal to .08, which the trial court merged with the vehicular homicide by intoxication conviction; (6) driving left of center, which the trial court merged with the vehicular homicide by intoxication conviction; and (7) speeding, which the trial court merged with the vehicular homicide by intoxication conviction. By agreement of the parties, the sentences were to run concurrently with each other for a total effective sentence of nine years, with the trial court to determine the manner of service of the sentences.

At a subsequent sentencing hearing, the parties presented the following proof: Summer Huffine, the Defendant's wife, testified that she and the Defendant had two children. She stated that the Defendant was very involved in their children's lives. Due to his extensive involvement with their children, Ms. Huffine expressed concern over the effect of his absence on the children should the trial court order incarceration. Ms. Huffine said that the Defendant was currently employed in construction and was the major provider in the home. Ms. Huffine explained that she had Type I Diabetes and that the Defendant helped manage her medication and blood sugar levels and helped her to "insert [her] pump and glucose monitor." She described the Defendant as "a good, hardworking, honest man who live[d] to work and care for other people." Ms. Huffine said that the Defendant had expressed remorse and regret over the accident and the pain he had caused the Jarrett family.

About the night of the accident, Ms. Huffine testified that she and the Defendant were celebrating their wedding anniversary and arranged for the Defendant's mother to watch their children. The two planned to stay the night in Bristol and were asleep when the Defendant's mother called saying the "baby" would not go to sleep. The Defendant woke up Ms. Huffine and told her they needed to go get their children. It was on the drive to pick up the children that the car accident occurred. Ms. Huffine agreed that she was injured in the accident. She could not recall the details of the statement she provided to the police on the day of the accident, but she agreed that the signed statement did not include the information about the phone call from the Defendant's mother. She explained that she did not remember "the crash at all" due to a concussion sustained during the incident. Ms. Huffine testified that the Defendant was not "the partying type" and that his main focus was their family. She described the Defendant's behavior as "isolated."

Ms. Huffine stated that the Defendant had not had anything alcoholic to drink since the accident.

Pamela Huffine, the Defendant's mother, testified that she was caring for the Defendant's children on the night of July 18, 2014. She said that she called the Defendant "a few times" to let him know the children would not go to sleep. Pamela Huffine said that she asked the Defendant to "come home." Pamela Huffine said that the Defendant did not indicate to her that he had been drinking and that it would be unsafe for him to drive. She stated that if the Defendant had told her he had been drinking, she would not have requested that he drive.

Felicia Flannery, the Defendant's mother-in-law, testified about the Defendant's involvement in his children's lives. She stated that if the Defendant was not at work, he was at home with his family. Ms. Flannery stated that it was her understanding that the Defendant and Ms. Huffine had made arrangements to stay in Bristol the night of the accident.

The State called Dustin Jackson, a Kingsport Police officer, who testified that he had been a traffic specialist assigned to the traffic unit. In this capacity, he compiled statistics on traffic accidents. He testified that in 2014, the Kingsport Police Department investigated approximately 3,000 crashes. Of those 3,000 crashes, approximately 500 were "serious injury crashes" and ten crashes were fatal. The ten fatal crashes resulted in twelve deaths in Kingsport, Tennessee. Officer Jackson testified that there were approximately 200 DUI arrests in 2014. He said the city of Kingsport was approximately fifty-two square miles and had a population of "about 52,000." Officer Jackson testified that the 2015 statistics were similar except for a "record low" of four fatal crashes resulting in five fatalities.

Officer Jackson described Stone Drive as a six-lane divided highway that runs the length of Kingsport and as "one of our major thoroughfares for the area." He said that approximately 30,000 vehicles a day travel on Stone Drive.

The State submitted as evidence two video recordings from the early morning hours of July 19, 2014. The first was from a police camera located at an intersection before the location of the accident. The video footage depicts a Honda Accord driving through a red light. The second video footage came from a video camera installed in a Golden State food truck. The truck was driving behind the victim's car and recorded the crash. Both recordings show other vehicles on the road at the time of the crash.

After hearing this evidence, the trial court stated that it had considered: the evidence presented at the plea submission hearing, the sentencing hearing, the

presence report, the principals of sentencing and arguments made as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, the arguments as to mitigating and enhancement factors, statistical information provided by the Administrative Office of the Courts for similar offenses, and the Defendant's potential for rehabilitation or treatment. The trial court found applicable: enhancement factor (1), that the Defendant had a history of criminal behavior; enhancement factor (2), that more than one victim was involved; enhancement factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high; and enhancement factor (14), that there was a violation of trust, which was applicable only to Count 2 in which the victim was the Defendant's wife. T.C.A. § 40-25-114(1), (2), (10), and (14) (2014). The trial court also found mitigating factors applicable: that the Defendant had expressed remorse for his conduct; that the Defendant had a strong work history of providing for his family; that the Defendant took responsibility for his crimes; and that the Defendant was involved in community activities. T.C.A. § 40-25-113(13) (2014). After considering factors related to probation, the trial court concluded that the Defendant should serve his sentences in the Tennessee Department of Correction. It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant asserts that the trial court erred in denying an alternative sentence. Specifically, he argues that he is eligible for probation pursuant to Tennessee Code Annotated section 40-35-303, that there is insufficient evidence to support a finding that incarceration will serve as a deterrence to others, and that the nature of the offenses do not outweigh factors weighing in favor of an alternative sentence. The State responds that the trial court properly acted within its discretion when it denied alternative sentencing.

The standard of review for questions related to probation or any other form of alternative sentencing is "'an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act.'" *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at

rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he or she is a suitable candidate for probation. T.C.A. § 40-3-303(b); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances . . . including a defendant's background." *State v.* Ashby, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), -103(4). The party appealing a sentence bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401, *Sentencing Comm'n Cmts.*

The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014). A trial court should also

"consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of both the defendant and the public" in determining whether to grant or deny probation." *State v. Ring*, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001) (citations omitted).

## A. Probation Eligibility

A defendant who does not fall within the class of offenders contemplated by Tennessee Code Annotated section 40-35-102(5), "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence pursuant to Tennessee Code Annotated section 40-35-103.

Applying the relevant statutes, we find that the Defendant is not presumptively a favorable candidate for alternative sentencing because he was convicted of a Class B felony. Even so, probation shall automatically be considered because the length of the Defendant's sentence is nine years. *See* T.C.A. § 40-35-303(a). The trial court considered probation, found that it was not appropriate in this case, and stated its reasons on the record: to avoid depreciating the seriousness of the offense, deterrence, and the Defendant's lack of potential for rehabilitation. *See* T.C.A. § 40-35-103. Thus, the issue is whether the trial court's reasons for denying alternative sentencing comport with the Criminal Sentencing Reform Act of 1989.

## B. Enhancement Factors

In considering an alternative sentence, the trial court considered enhancement factors and found applicable: enhancement factor (1), that the Defendant had a history of criminal behavior; enhancement factor (2), that more than one victim was involved; enhancement factor (10) that the Defendant had no hesitation about committing a crime when the risk to human life was high; and enhancement factor (14), that there was a violation of trust in which the Defendant's wife was the victim. T.C.A. § 40-35-114 (1), (2), (10), and (14).

### 1. History of Criminal Behavior

The trial court found applicable enhancement factor (1), that the Defendant had a history of criminal convictions and criminal behavior. T.C.A. § 40-35-114. The trial

court first considered a 2006 traffic conviction and then two 2006 "bad check" warrants. As to the 2006 warrants, the trial court stated as follows:

> [T]he State has introduced as evidence, two prior bad check warrants out of the General Sessions Court for Washington County, Tennessee from 2006 as well. It looks like those were criminal summons that were issued and they were returned, according to the presentence report . . . they were both returned to the clerk of the court un-served although we only have a certified copy of the front of the affidavit which doesn't show any service.

The trial court correctly concluded that it could not consider these warrants as criminal convictions. The trial court then went on to state that it would, however, consider the warrants "as evidence of a prior criminal behavior."

In *State v. Marshall*, this court held that, "an arrest or charge is not considered evidence of the commission of a crime." *See State v. Miller*, 674 S.W.2d 279, 284 (Tenn.1984). There must be more than an unserved arrest warrant to support a finding that the Defendant engaged in criminal behavior. Thus, we conclude that the trial court erroneously applied this factor.

### 2. More Than One Victim

Next, the trial court considered enhancement factor (3), that more than one victim was involved. T.C.A. § 40-35-114(3). This factor may only be applied to persons not named as a victim in an indictment and who were "injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." *See State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); *State v. Raines*, 882 S.W.2d 376 (Tenn. Crim. App. 1994).

In this case, there were three victims: (1) Bobby Jarrett, named in the indictment as the victim of vehicular homicide by intoxication; (2) Summer Huffine, named in the indictment as the victim of reckless aggravated assault; and (3) Bryan Hobbs, named in the indictment as the victim of reckless endangerment. This court has held that the "more than one victim" factor may not be applied to enhance a sentence when the defendant is separately convicted of the offenses committed against each victim. *State v. Makoka*, 885 S.W.2d 366, 373 (Tenn. Crim. App.); *State v. Lambert*, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). Thus, the trial court erroneously applied this factor.

### 3. No Hesitation About Committing a Crime When the Risk to Human Life was High

The trial court applied enhancement factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high. T.C.A. § 40-35-114(3). The offense of driving while intoxicated creates a high risk to human life and potential for great bodily harm. As we have already noted, there were three specific victims named in the indictment. As applied to those victims, the factor is encompassed by the proof necessary to establish the offenses. *See State v. Bingham*, 910 S.W.2d 448. The trial court did not state who it was considering as victims in applying this factor. In viewing the video recordings of the crash, however, we note the headlights of other vehicles on the roadway nearby at the time of the crash. Therefore, the record supports the trial court's finding that the Defendant created a risk to lives other than the victims named in the indictment. Therefore, we conclude that the trial court correctly applied this enhancement factor.

### 4. Violation of Trust

Finally, the trial court found applicable enhancement factor (14), that there was a violation of trust, and applied this factor only to Count 2. T.C.A. § 40-35-114(14). Count 2 of the indictment is the reckless aggravated assault of the Defendant's wife, Summer Huffine.

This enhancement factor is often found applicable in cases involving adult perpetrators and minor victims; however, our Supreme Court, in *State v. Gutierrez*, addressed the application of this factor in the context of two adults.

> As stated in *State v. Kissinger*, to determine the application of the private trust factor, the court must look to "the nature of the relationship," and whether that relationship "promoted confidence, reliability, or faith." *State v. Kissinger*, 922 S.W.2d at 488. A relationship which promotes confidence, reliability, or faith, usually includes a degree of vulnerability. It is the exploitation of this vulnerability to achieve criminal purposes which is deemed more blameworthy and thus justifies application of the enhancement factor. Accordingly, factor [14] is construed to apply only where there is evidence that the nature of the relationship between the perpetrator and the adult victim caused the victim to be particularly vulnerable. If such a relationship or "private trust" is shown, the State must then prove that the perpetrator abused that relationship in committing the crime. As with all determinations regarding the application of an enhancement factor, the utilization of this analysis "is a task that must be undertaken on a case-by-case basis." [*State v.*] *Poole*, 945 S.W.2d [93,] 96 [(Tenn. 1991)].

5 S.W. 3d 641, 646 (Tenn. 1999). Thus, this enhancement factor has been construed to apply only when there is evidence that the nature of the relationship between the perpetrator and an adult victim caused the victim to be particularly vulnerable. *Id.*

In the present case, the record shows that the Defendant and Ms. Huffine were married and had two children. Beyond that, there is little in the way of facts concerning the existence of a relationship which promoted a reliance, confidence, and faith that created a vulnerability on the part of Ms. Huffine. Because nothing in the record supports a finding that the Defendant, for purposes of enhancement, occupied a position of private trust with respect to Ms. Huffine, this enhancement factor should not have been applied. Therefore, the trial court erroneously applied enhancement factor (14). However, we note that the trial court gave this factor "minimal weight," and then stated "I don't think I'm giving it probably any consideration at all."

### C. Probation Factors

As earlier stated, Tennessee Code Annotated section 40-35-103 provides factors for consideration when a trial court is determining whether to order incarceration.

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014). A trial court should also "consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of both the defendant and the public" in determining whether to grant or deny probation." *State v. Ring*, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001) (citations omitted).

The trial court found that the Defendant did not have a long history of criminal conduct nor had measures less restrictive than confinement been unsuccessfully applied. The trial court found applicable that confinement was necessary to avoid depreciating the

seriousness of the offense, that confinement would serve as an effective deterrence, and that the Defendant had a low potential for rehabilitation.

### 1. Confinement To Avoid Depreciating the Seriousness of the Offense

The trial court gave "great weight" to this factor. The trial court stated that it did not believe the Defendant's version of the events that he was "pressured into leaving Bristol to come back to Kingsport" due to his mother's phone call regarding the children. The trial court found:

> Mr. and Ms. Huffine got back in the car and drove to Kingsport after a night of drinking and they made the decision to do that and Bobby Jarrett died as a result and based on all the facts that I've heard . . . full probation would unduly depreciate the seriousness of this offense.

This Court has previously held that in vehicular assault cases involving drunken driving where the victim sustains severe injuries, some confinement may be warranted in order to avoid depreciating the seriousness of the offense. *State v. Kyte*, 874 S.W.2d 631, 633 (Tenn. Crim. App. 1993). Further, exposing passengers and other motorists to the dangers of drunken driving has been held to be a sufficiently reprehensible circumstance of the offense of vehicular homicide to justify a denial of full probation and an imposition of a period of confinement. *Bingham*, 910 S.W.2d at 456; *State v. Butler*, 880 S.W.2d 395, 401 (Tenn. Crim. App. 1994). Therefore, the record supports the application of this factor.

### 2. Deterrence

Next, the trial court considered whether confinement is particularly suited to provide an effective deterrent. The trial court relied on Officer Jackson's testimony regarding the 3,000 automobile crashes, 200 DUI arrests, and twelve accident-related fatalities in Kingsport in 2014. These statistics were roughly consistent with the 2015 statistics for Kingsport, a city of 52,000 people with 500 miles of roadway. The trial court found that confinement was particularly suited to provide a deterrent and gave "a small degree of weight" to this factor. The record supports the trial court's application of this factor.

### 3. Rehabilitation

In considering the Defendant's potential for rehabilitation, the trial court made the following findings:

[The Defendant] self-reports that he does not have a drinking problem, that he drinks occasionally at dinner, denies any past use of illegal or non-prescribed drugs. The court is of the opinion the fact that hours after he says he stopped drinking he is still a .152 which is very near double the legal limit. The court is of the opinion based on the proof that I've heard and this presentence report that he is in denial about an alcohol problem. Now binge drinking, which is what this was, the testimony of his wife was, Summer Huffine was that they hadn't had, and his statement, too, that they hadn't had a date night and they allowed friends to let loose basically and given the degree of blood alcohol still in his system at 6 a.m. the next day, the next morning, the court is concerned that he does have a problem, that he's not faced that problem and that that could become a potential issue for rehabilitation based on the proof that's in the record. In his statement on page 6 he doesn't, other than saying that he drank, had a few drinks, that's all he says about it. I find that that's a negative factor.

In considering the issue of a defendant's potential for rehabilitation, this court has previously found that the failure to accept responsibility for one's actions is a proper consideration for determining potential for rehabilitation. *See State v. Dowdy*, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

According to the testimony at the sentencing hearing and the Defendant's own statement in the presentence report, he has stopped drinking alcohol since the accident. The Defendant graduated from high school with a 3.2 grade point average and received a track scholarship from East Tennessee State University, where he enrolled in the pre-med program. The Defendant has a strong work history and has not shown a pattern of repeated criminal behavior or repeatedly violated the terms of sentences involving release into the community. The Defendant is married with two children, ages nine and three at the time of the presentence report. By all accounts, he is very involved in the parenting of both children. The Defendant has no history of drug or alcohol abuse. He reports that he is an occasional drinker, and this statement is supported by the testimony of his wife and mother-in-law. In our view, the Defendant has a high potential for not re-offending and remaining a productive member of society. The Defendant's potential for rehabilitation is an important factor for the trial court to consider and should be a broader consideration than the issue of whether the Defendant might have an alcohol problem.

In sum, however, the record contains substantial evidence supporting the trial court's decision to deny probation. Notwithstanding the trial court's errors as discussed herein, the Defendant has failed to rebut the presumption of reasonableness this court must afford to all in-range sentencing decisions. *See Caudle*, 388 S.W.3d at 278-79. The

- 12 -

defendant's claim that the trial court abused its discretion by denying an alternative sentencing is not supported by the record.

### III. CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE